# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JESSICA MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-00509 |
| | ) | |
| AUSTIN PEAY STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this employment discrimination action is a Motion to Dismiss Jessica Morris' Amended Complaint filed by Austin Peay State University ("APSU") (Doc. No. 28). That Motion has been fully briefed by the parties (Doc. Nos. 29, 33 & 36) and, for the reasons that follow, will be denied.

### I. Factual Allegations

The allegations in the Amended Complaint, construed in Morris' favor are as follows:

Morris holds a Master's Degree and is an instructor in the Department of Communication at APSU. On March 1, 2017, APSU published a job posting for an Assistant/Associate Professor of Communication. The posting indicated that a Master's Degree was required.

On April 7, 2017, Dr. Frank Parcells, the Search Committee Chair, emailed Morris, requesting that she be available for an interview and a teaching demonstration on April 10 or 11, 2017. On April 10, 2017, Morris met with Dr. Dixie Webb, the Dean of the College of Arts and Letters, and gave a teaching demonstration. The following day, Morris was interviewed by the search committee, and had a question and answer session with other faculty members.

At a meeting with Dr. Parcells and Dr. Pam Gray, the Communications Chair, on April 20,

2017, Morris was notified that she was selected for the position. However, on April 26, 2017, Dr. Gray informed her that the Provost of APSU, Dr. Rex Gand, had refused to sign off on the paperwork for the position, citing "lack of PhD" as the reason. Dr. Gray also informed Morris that the position did not require a PhD, and that the Provost had approved the requirements for the job prior to its posting. Nevertheless, Dr. Gray was directed to "fail the search."

On May 24, 2017, Morris was advised that the university was officially rescinding its job offer. She was also told that the position would be reposted with a PhD requirement and that she therefore would not be eligible for the position.

Morris filed a complaint with APSU, after which she claims to have been retaliated against. Specifically, when the complaint was filed, Morris requested anonymity, as was her right. However, a public meeting was held to discuss her allegations. During that meeting the press was present, and APSU's attorney insisted upon using Morris' name when airing her allegation, even though several other participants referred to her by using a pseudonym. This led to wide disdain for Morris on campus.

Based upon the foregoing allegations, Morris filed suit in this Court alleging gender discrimination and retaliation. APSU moves to dismiss both claims on both procedural and substantive grounds.

## II. Legal Discussion

APSU first moves to dismiss on the grounds that Morris received notice that she would not receive the Assistant Professor position on April 26, 2017, but she did not file a complaint with the Equal Employment Opportunity Commission ("EEOC") until November 14, 2017, which would be more than 200 days later. As APSU points out, in a deferral state such as Tennessee, "Title VII

requires a party wishing to contest an allegedly discriminatory act to file a charge with the EEOC within 300 days of the act, if the party 'initially instituted proceedings with a State or local agency" qualified to provide relief, or within 180 days, if the party did not do so. 42 U.S.C. § 2000e–5(e)(1).'" El-Zabet v. Nissan N. Am., Inc., 211 F. App'x 460, 463 (6th Cir. 2006). Because there is no suggestion that Morris filed a complaint with the Tennessee Human Rights Commission, APSU insists that the Amended Complaint must be dismissed for failure to exhaust administrative remedies.

APSU focuses on Morris' statement in the Amended Complaint that she filed "a Charge of Discrimination on or about November 14, 2017 – (EEOC No. 494-2018-00116) alleging discrimination based on gender, pay discrimination and retaliation." (Doc. No. 26, Am. Compl. ¶ 5). However, later in the Amended Complaint, Morris alleges that "she filed a Charge of Discrimination with the EEOC on October 12, 2017," (Id. ¶ 25), which would be within the 180-day window, and make her charge of discrimination timely.

In response to APSU's Motion to Dismiss, Morris attached two exhibits which seem to clarify the discrepancy in dates. The first is a "Charge of Discrimination" alleging sex discrimination and was dated August 31, 2017, signed by Morris, and faxed to the EEOC on October 11, 2017. (Doc. No. 33-1). The second is a letter from the EEOC dated October 24, 2017, acknowledging that the agency had received a complaint of employment discrimination in violation of Title VII, attaching an EEOC Form 5 – Charge of Discrimination for Morris' review and signature, and instructing her to return the signed form within 30 days. Morris apparently complied with that request, thus resulting in the November 14, 2017 date referenced in the Amended Complaint.

Based on this limited record, the Court concludes that Morris timely filed her EEOC charge.

While the letter to Morris indicated that the EEOC would not investigate the charge until the material it had sent had been returned by her, the letter also stated that "[b]ecause the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge." (Doc. No. 33-2 at 1). In similar circumstances, this acknowledgment from the EEOC has been deemed sufficient to establish the filing of a charge because the employer has received notice, and any prejudice would be greater to the employee than the employer were the litigation allowed to go forward. Farley v. Goodwill Indus. of Lower S.C., Inc., No. 4:15-CV-2450-RBH-KDW, 2016 WL 408949, at *9-13 (D.S.C. Jan. 12, 2016); Gad v. Kansas State Univ., No. CV 12-2375-EFM, 2016 WL 74399, at *7-9 (D. Kan. Jan. 6, 2016). This court agrees, and will not dismiss the Amended Complaint on procedural grounds.

APSU also moves to dismiss Morris' substantive claims on the merits. That request is premature, and one better raised (if appropriate) at the summary judgment stage.

To survive a motion to dismiss, a claim need only be plausible after the complaint is construed in plaintiff's favor and the well-pleaded factional allegations are accepted as true. Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp., 830 F.3d 376, 383 (6th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

With regard to retaliation, Morris alleges:

> 26. After Plaintiff filed a complaint with Austin Peay she was subjected to acts of retaliation in that Austin Peay disclosed to the public Plaintiff's identity and nature of her complaint against the university. Plaintiff alleges that this was done in retaliation for Plaintiff's protected activity. As part of her complaint with the University, Plaintiff requested anonymity as she was advised by APSU that was her

4

> right to do. Defendant held a public meeting upon Plaintiff's complaint on August 3, 2017. Defendant was fully aware that this meeting was being covered by the local media. While most participants referred to Plaintiff by using a pseudonym, the University attorney insisted upon using Plaintiff's name so that all the University community and the public would be aware of Plaintiff's identity and complaints. This caused Plaintiff much emotional harm as she was subjected to ridicule and hostile attitudes by those in the public as well as those at the university. To this day, Plaintiff is shunned by some University employees.

(Amended Complaint ¶ 26). Because one of the elements of a *prima facie* case of retaliation is an adverse employment action, Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013), and none is alleged, APSU contends this claim must be dismissed.

Admittedly, Morris's retaliation claim is thin given the Supreme Court's holding in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation omitted) that an antiretaliation "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Being shunned or avoided, Creggett v. Jefferson Cty. Bd. of Educ., 491 F. App'x 561, 569 (6th Cir. 2012), or being ostracized, Wierengo v. Akal Sec., Inc., 580 F. App'x 364, 373 (6th Cir. 2014) are not adverse actions for purposes of retaliation, nor are the "petty slights or minor annoyances that 'often take place at work and that all employees experience,'" Burlington, 548 U.S. at 68. Morris' retaliation claim could easily be read as suggesting that she did not suffer from an adverse employment action.

On the other hand, the Supreme Court in Burlington was quick to point out that in determining whether a reasonable person would be dissuaded, the overall circumstances must be considered:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.

5

> "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others."

Burlington, 548 U.S. 69 (internal citation omitted).

Moreover, while the Supreme Court in Twombly and Iqbal eliminated the relaxed "any set of facts" standard announced fifty years earlier in Conley v. Gibson, 355 U.S. 41 (1957), it did not abrogate its unanimous holding in Swierkiewicz v. Sorema, 534 U.S. 506 (2002) that the *prima facie* case under McDonnell Douglas "is an evidentiary standard, not a pleading requirement." Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012). Consequently, it is "error for [a] district court to require [plaintiff] to plead a *prima facie* case under McDonnell Douglas in order to survive a motion to dismiss." Id. Instead, under the "plausibility" standard of Twombly and Iqbal, a complaint need only allege "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that unlawful conduct has occurred. Id. at 610 (quoting Iqbal, 556 U.S. at 678).

Given this standard, Morris' retaliation claim is sufficiently alleged, even if barely so. She claims that APSU's action caused her "emotional harm" which led to medical expenses and "pharmacological" costs (Amended Complaint at 13), suggesting that she was subjected to more than run-of-the-mill, cold shoulder treatment. Further, in her reply brief Morris plausibly asserts that the

6

hearing during which her name was used (despite the promise that she would remain anonymous) was televised by local media and otherwise widely disseminated, and this coverage "destroyed her relationships with coworkers, creat[ed] a chilling environment in her department and brand[ed] her a troublemaker for all future employment opportunities, in and outside the University." (Doc. No. 33 at 7). In the academic setting, especially a faculty member's reputation is his or her most precious asset. Indeed, a person's reputation opens a closed door and closes an open door. When APSU labeled Morris a troublemaker it placed a permanent "mark of the beast" upon Plaintiff's forehead. At a minimum, it diminished her career opportunities at APSU, if not throughout the world of higher education. Whether this is true or not is something only discovery can answer.

Finally, APSU argues that Morris' sex discrimination claim must be dismissed because she claims that a male employee was paid more than her, but the male employee she is referencing is not similar. He, unlike Morris, was a full time employee, and an Assistant Professor. As APSU suggests, "[t]o prevail on a claim for gender-based discrimination under Title VII, Morris must show that she was paid less than a male employee for 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Beck–Wilson v. Principi, 441 F.3d 353, 359 (6th Cir. 2006) (quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)). However, APSU misconstrues the nature of this part of Morris' sex discrimination claim, and ignores other allegations in the Amended Complaint that serve as a basis for sex discrimination.

Morris claims that she was treated differently than males because a similarly situated male, *i.e.* one with a Master's Degree but not a PhD, was hired as an Assistant Professor, but she was not. It was allegedly because of this different treatment based on sex that he was allowed to become a full

7

time employee and, as a consequence, receive higher pay. Moreover, Morris claims that the hiring of the male over her was discriminatory itself (regardless of the pay differential) because both were equally qualified, yet he was chosen but she was not. These are quintessential sex discrimination claims and are not subject to dismissal at the motion to dismiss stage.

### III. Conclusion

On the basis of the foregoing, APSU's Motion to Dismiss (Doc. No. 28) is **DENIED.** This case is returned to the assigned Magistrate Judge for further pretrial case management.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE